# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### OXFORD DIVISION

**DARNELL WILSON**                                              **PETITIONER**

**v.**                                              **No. 3:14CV177-GHD-JMV**

**WARDEN BUSCHER**                                              **RESPONDENT**

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Mississippi state prisoner Darnell Wilson for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition, and Wilson has replied. The matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### Habeas Corpus – General Discussion

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, *The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame*, 53 N.Y.U.L.Rev. 983 (1978); Glass, *Historical Aspects of Habeas Corpus*, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that, " The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it. U.S. Const. art. I, § 9, cl. 2, *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

> 1948 Judicial Code. The recodification of that year set out important procedural
> limitations and additional procedural changes were added in 1966. The scope of the
> writ, insofar as the statutory language is concerned, remained essentially the same,
> however, until 1996, when Congress enacted the Antiterrorism and Effective Death
> Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners
> and setting out special, new *habeas corpus* procedures for capital cases. The changes
> made by the 1996 legislation are the end product of decades of debate about *habeas
> corpus*.

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of

the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held

by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct.

582, 588, 59 L. Ed. 969 (1915).

### Facts and Procedural Posture

The petitioner, Darnell Wilson, is in the custody of the Mississippi Department of Corrections

and is currently housed at the East Mississippi Correctional Facility in Meridian, Mississippi. On June

29, 2010, Wilson was convicted in the Circuit Court of Desoto County, Mississippi, of count of grand

larceny, one count of felony fleeing, and one count of simple assault on a law enforcement officer. He

was sentenced as a habitual offender (under Miss. Code Ann. § 99-19-83) to serve concurrent life

terms for each count. State Court Record ("SCR"), Vol. 2, p. 282-284.

Wilson filed an appeal of his convictions and sentences in the Mississippi Supreme Court. On

appeal, Wilson was represented by counsel through the Mississippi Office of Indigent Appeals.

Appellate counsel filed a brief stating that there were no arguable issues which could be presented for

appellate review under *Lindsey v. State*, 939 So.2d 743, 748 (Miss. 2005). The Mississippi Court of

Appeals requested supplemental briefing from both parties regarding the issue of the constitutionality

of Wilson's sentence and requested that the parties address whether the sentence reached the threshold

to trigger a proportionality analysis by the trial judge. Both Wilson, through counsel, and the State

filed supplemental briefs on that issue.

On January 15, 2013, the Mississippi Court of Appeals affirmed the judgment of the circuit court. *Wilson v. State,* 106 So.3d 853 (Miss. Ct. App. 2013). The court also held that "[a]fter an examination of Wilson's *pro se* supplemental brief and a thorough review of the record in this case, we find that Wilson raises no arguable issues in support of his appeal." *Id* at 859. Wilson's motion for rehearing was due in the Mississippi Court of Appeals on January 29, 2013, within fourteen days of the direct appeal decision. *See* Miss. R. App. P., Rule 40(a). Wilson filed a motion requesting an extension of time to file a motion for rehearing, and the court granted an extension to February 12, 2013. Wilson did not, however, file a motion for rehearing by that date. On February 19, 2013, the Mississippi Court of Appeals issued the mandate. On March 4, 2013, Wilson filed another request for an extension of time to file a motion for rehearing. The Mississippi Court of Appeals originally granted the motion, but, after review, filed a corrected order denying the request for an extension. As Wilson did not file a timely motion for rehearing, he was barred from filing a petition for writ of *certiorari* with the Mississippi Supreme Court. *See* M.R.A.P. 17. On May 28, 2013, Wilson filed a motion in the Mississippi Supreme Court asking for an out of time appeal, however, the court denied the request by Order filed July 18, 2013. On August 20, 2013, Wilson filed an untimely petition for *certiorari* in the United States Supreme Court, which denied the petition on December 9, 2013. *See* SCR, Briefs and Pleadings, Miss. S. Ct. Case No. 2010-KA-1276-COA.

On December 12, 2013, Wilson filed an Application to Proceed in the Trial Court with a Motion for Post-Conviction Relief in the Mississippi Supreme Court. The application was signed on December 6, 2013. Wilson raised the following issues, *pro se*:

Issue One.    Right to confront witnesses. Wilson stated that hearsay evidence was a deciding factor in his trial because a substantial document which

sought payment for damages that would have ceased the prosecution. The executive assistance show [*sic*] have testified at trial but didn't.

Issue Two.         Wrongfully amended as a habitual offender under 99-19-83.

Issue Three.      Equal protection rights: Wilson states that the state picked the entire jury pool and denied his the exercise of using any of his 12 strikes to deny or object to any of the empaneled jurors.

Issue Four.       Due Process - Wilson stated that his right to a fair and impartial trial was denied because a jury instruction D-1 was disregarded and denied to be submitted to the jury.

Issue Five.       Hearsay Evidence - Wilson stated his rights were not protected when the judge allowed hearsay evidence from Mrs. Candance Whisman of Tennessee to attest to his past.

The Mississippi Supreme Court dismissed the motion on June 10, 2014. The court found that:

the issues regarding the right of confrontation, admission of hearsay evidence and denial of a jury instruction are now waived for Wilson's failure to raise those claims before the trial court or on direct appeal. Likewise, the claim regarding the amendment of the indictment to charge Wilson as a habitual offender was raised on direct appeal and addressed by the Court of Appeals. Therefore, the claim is now barred by the doctrine of *res judicata*.

*Wilson v. State of Mississippi*, 2013-M-02094 (Miss. S. Ct. 2014).

Wilson filed the instant petition for writ of *habeas corpus* in this court on August 8, 2014.

Doc. 1. On April 28, 2015, the court ordered the State to file an answer to the petition. Doc. 13.

Wilson has filed at least eleven amendments to his petition, four of which were filed before the order

to answer, the remainder afterwards. Docs. 9, 10, 11, 12, 16, 17, 18, 19, 23, 24, 25, 29, 32, 34.

In his filings, Wilson raises the following grounds for relief, *pro se*, as summarized and

enumerated by the court in the interest of clarity:

Ground One.       Right to confront witnesses. The Petitioner contests that the state used testimony (hearsay) from an employee concerning an important document from the Kohl's department store executive.

- 4 -

Ground Two.        Wrongful conviction under 99-19-83 status.

Ground Three.      Ineffective assistance of counsel. The petitioner attorney failed
                   to object to the state having a second bite at the forbidden
                   apple once the judge allow the state to re-evaluate his prior
                   convictions.

Ground Four.       Misinterpretation of prior convictions (10 pack) from the state
                   of Tennessee.

Ground Five.       Prosecutorial Misconduct.

Ground Six.        Wilson argues that a substantial conflict exists as to whether he
                   is actually a habitual offender under the statute of 99-19-83.

Ground Six.        Wilson states he was severely prejudiced by the prosecutor
                   when the state superceded the past ruling of a Tennessee judge
                   by the Miss. Prosecutor separating a concurrent sentence.

Ground Seven.      Wilson states that the trial judge erred by not allowing a new
                   trial after Petitioner and counsel Mr. Vandenburg showed
                   sound and sufficient document proof of evidence as to why
                   Wilson was not a 99-19-83 habitual offender.

Ground Eight.      Wilson argues that the indictment failed to distinguish between
                   simple assault and felony assault.

Ground Nine.       Cruel and unusual punishment.

Ground Ten.        Due Process - indictment erroneously amended.

Ground Eleven.     Equal Protection Rights.

Ground Twelve.     Wilson states the court erred by allowed prosecutor Smith V.
                   Murphy to violate the constitutional right to a fair and
                   impartial jury.

Ground Thirteen.   Wilson states the court erred by allowing the prosecutor to use
                   misinformation from his pre-sentence investigative report
                   where as the prior convictions were not considered violent
                   felonies in the state of Tennessee.

Ground Fourteen.   Indictment is defective because it alleged misdemeanor simple assault
                   rather than felony assault on a police officer.

| Ground Fifteen. | Wilson further states that the court erred by convicting him under the crime of felony fleeing, when there was no high-speed chase and the factual crime was resisting arrest. |
|---|---|
| Ground Sixteen. | Insufficient evidence for sentencing as a habitual offender. |
| Ground Seventeen. | Insufficient evidence for conviction of grand larceny and felony fleeing. |
| Ground Eighteen. | Ineffective assistance of counsel for failure to properly cross examine Kohl's executive office of loss prevention employee. |
| Ground Nineteen. | Wilson states he never received copies of his prior charges from Tennessee nor a copy of amended motion to amend indictment until the day of 6/22/09 during his sentencing hearing. |
| Ground Twenty. | The Fifth Amendment guarantees that an individual cannot be prosecuted for a capital or infamous offense except on presentment or indictment of a grand jury and petitioner's indictment was not presented nor was he/she indicted or of by a grand jury. |

## Discussion

Mr. Wilson's grounds for *habeas corpus* relief must be dismissed for several reasons. First, Grounds Three, Five, Twelve, Fourteen, Sixteen, Seventeen, and Eighteen must be dismissed under the doctrine of procedural default because he failed to raise these claims in the Mississippi Supreme Court, and he cannot do so now. Second, Ground One must be dismissed under the doctrine of procedural bar because the Mississippi Supreme Court dismissed that ground for relief based upon an independent and adequate state rule. Third, Wilson's remaining claims must be dismissed because the Mississippi Supreme Court decided those claims on the merits, and Wilson has not presented any justification to overcome the presumption that the state court decided them properly. The court will discuss these issues, in turn, below.

### The Doctrines of Procedural Default and Procedural Bar

Mr. Wilson's claims in Grounds One, Three, Five, Twelve, Fourteen, Sixteen, Seventeen, and Eighteen must be dismissed under the doctrines of procedural bar (as to Ground One) and procedural default (as to the others). If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir.2012). Thus, a federal court may not consider a *habeas corpus* claim when, " (1) a state court [has] declined to address [those] claims because the prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, —— U.S. ——, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*. To determine the adequacy of the state procedural bar, this court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id.*

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644 (citations omitted).

**Ground One: Procedural Bar**

Wilson raise his claims in Ground One (use of hearsay and right to confront witnesses) in his Motion for Post-Conviction Review, and the Mississippi Supreme Court held that they were barred from review under Miss. Code Ann. § 99-39-21(1).[1] The court is thus prohibited from reviewing this

---

[1]  Miss. Code Ann. § 99-39-21(1) provides:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall

ground for relief under the doctrine of procedural bar. Section 99-39-21(1) of the Mississippi Code is an independent state procedural bar. *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997). As to the adequacy of the state procedural bar, Mr. Wilson "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the Petitioner himself." *Id.* Wilson has not made the proper showing in the present case, and this court is prohibited from considering Ground One unless he can demonstrate cause for the default in state court – or actual prejudice resulting from it. *Id.* at 861. He shown neither cause for his failure to raise this issue at trial or on direct appeal, nor prejudice if this court applied the procedural bar. Similarly, he has not shown that a fundamental miscarriage of justice would result if the court declined to consider the merits of his claims in Ground One, as he has not provided new evidence, not available at trial, to show that "more likely than not[,] . . . no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted). Ground One of the instant petition will thus be dismissed as procedurally barred.

### Grounds Three, Five, Twelve, Fourteen, Sixteen, Seventeen, and Eighteen: Procedural Default

Mr. Wilson never presented his claims for relief in Grounds Three, Five, Twelve, Fourteen, Sixteen, Seventeen, and Eighteen to the Mississippi Supreme Court. As such, under the doctrine of procedural default, this court may not consider their merits unless: (1) Wilson shows cause for his failure to do so and prejudice from application of procedural default, or (2) that a fundamental miscarriage of justice would result if the court decided not to review the claims on the merits. As Mr.

---

be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Wilson has shown neither that the cause and prejudice nor fundamental miscarriage of justice exceptions apply in this case, the court will not consider the merits of these claims, which will be dismissed under the doctrine of procedural default.

### Grounds Two, Four, Six(a), Six(b)[1], Ground Seven, Ground Eight, Ground Nine, Ground Ten, Ground Eleven, Ground Thirteen, Ground Fifteen, Ground Nineteen, and Ground Twenty: Decided on the Merits in State Court

The Mississippi Supreme Court has already considered Grounds Two, Four, Six(a), Six(b), Seven, Eight, Nine, Ten, Eleven, Thirteen, Fifteen, Nineteen, and Twenty on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's

---

[1] The State inadvertently identified two of Wilson's claims for relief as "Ground Six" when collecting the claims from his petition and its numerous amendments. To most closely match the State's numbering, the court has designated the two claims as "Ground Six(a)" and "Ground Six(b)."

claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to these grounds of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection

(d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

### Mr. Wilson's Status as a Habitual Offender:  Grounds Two, Four, Six(a), Six(b), Seven, Eight, Nine, Ten, Thirteen, Nineteen, and Twenty

Though Mr. Wilson uses different language to describe his claims for relief in Grounds Two, Four, Six(a), Six(b), Seven, Eight, Nine, Ten, Thirteen, Nineteen, and Twenty, they all boil down to the same issue:  Whether the trial court was correct in finding that Mr. Wilson was a habitual offender under Miss. Code Ann. § 99-19-83, which, mandates a sentence of incarceration for life without parole if a defendant's prior convictions meet the elements of the statute.  Part of this claim involves whether the trial court should have permitted amendment of the indictment to include a habitual offender charge, while part challenges whether Wilson's numerous prior convictions actually met the statutory requirements to establish habitual offender status under Miss. Code Ann. § 99-19-83.  As discussed below, neither of these arguments has merit.

### Facts as Set Forth by the Mississippi Court of Appeals

On direct appeal, the Mississippi Court of Appeals set forth the evidence presented at trial:

On August 21, 2009, Kevin Licht, an employee at Kohl's Department Store's loss-prevention department in Southaven, Mississippi, observed what he believed to be suspicious activity in the store. At approximately 4:00 p.m., Licht began to track an individual via surveillance camera from inside the store's loss-prevention office. Licht identified the individual as Wilson.

Licht called the Southaven Police Department, requesting assistance. Licht stated that he observed Wilson gather merchandise and go to the west side of the store and stuff the merchandise into what appeared to be a black garbage bag. Wilson then left the store through the west doors. Licht followed Wilson and asked him to stop. Wilson refused.

When the police arrived on the scene, Wilson began to run, dropping the garbage bag containing the merchandise. Licht concluded that the total value of everything taken

- 12 -

by Wilson from Kohl's amounted to $934.

Officer Nicholas Kennedy of the Southaven Police Department was dispatched to Kohl's in response to Licht's call. When Officer Kennedy arrived on the scene, he set up a perimeter and waited until he could get a visual on someone leaving the store. Officer Kennedy eventually observed Wilson leaving the store. Officer Kennedy stated that when Wilson left the store, he was carrying a large black bag. Wilson dropped the bag when Officer Kennedy made contact with him, and Wilson began running to his vehicle in the Kohl's parking lot.

When Officer Kennedy arrived at Wilson's vehicle, other police officers had also arrived at the scene. Officer Kennedy observed Wilson drive the vehicle "backwards and forwards several times," and Officer Kennedy testified that the other officers were trying to stop the vehicle. When Wilson failed to comply with the officers' commands to stop and exit the vehicle, Officer Kennedy shot Wilson with a taser gun. At that point, Wilson drove off in the vehicle.

Officer Jeremy Iverson of the Southaven Police Department was also called to the scene. During the encounter in the Kohl's parking lot, Officer Iverson pulled his vehicle within two feet of Wilson's vehicle. Officer Iverson exited his vehicle and went to the driver's side of Wilson's vehicle in an attempt to stop Wilson and force him and a passenger to exit the vehicle. Wilson then put the vehicle in reverse and hit Officer Iverson's vehicle. He then put his car in drive, and hit a civilian vehicle. While Wilson drove his vehicle back and forth, Officer Iverson reached his arm into the car and attempted to remove the keys from the ignition. Wilson then drove away in his vehicle, with police officers in pursuit.

As a result of the incident, Officer Iverson testified that he experienced pain and soreness from his shoulder to his fingertips. Officer Iverson went to Baptist Memorial Hospital for treatment, where doctors diagnosed him with a shoulder strain. Officer Steven Raines, another officer at the scene, provided testimony which largely corroborated the testimony provided by Officers Kennedy and Iverson.

Police officers ultimately apprehended Wilson on Queen Elizabeth Drive in Memphis, Tennessee, after following Wilson's vehicle. While in pursuit of Wilson, police officers observed Wilson run several stop lights and hit another vehicle. Officer Donald Burr testified that when he arrived on the scene, two individuals were being detained—Wilson and his brother, the passenger in Wilson's vehicle. Officer Burr collected some clothes from the back of the vehicle.

Wilson's mother, Eunice Wilson, testified in her son's defense. She stated that after the shoplifting incident, she received a letter from Kohl's, indicating that there was a $225 penalty for her son's shoplifting from the store. Eunice claims she paid the entire amount. She also admitted that the letter indicated that the money requested by Kohl's was for a civil penalty, and not a payment for the merchandise itself. Trinity Bodkins,

a loss prevention manager for Kohl's, also testified and confirmed that the $225 charge was to pay for other expenses incurred and in no way reflected the value of the items taken in the shoplifting incident.

Wilson's brother, Randolph Wilson, also testified in Wilson's defense, stating that he was with Wilson on the day in question. Randolph claimed that the police officers were assaulting Wilson, and not the other way around.

Wilson took the stand and testified in his own defense. He admitted to shoplifting from Kohl's, and he testified that the reason he fled from the police was to return his mother's vehicle to her so that the police officers would not "tear it up." Wilson also admitted that he continued to drive away after repeatedly being ordered to stop by the police officers, explaining: "It was only shoplifting. It wasn't murder, honey." Wilson claimed that he dated a police officer for seventeen years, so he knew "what's right and what's not" regarding when to follow orders from police officers.

Wilson testified that as a result of being shot with the taser gun, his ability to drive was affected, which led to his side-swiping another vehicle while driving away from the police officers. Wilson also denied assaulting Officer Iverson, claiming Officer Iverson should not have continued to try to arrest him.

On cross-examination, Wilson boasted that he had shoplifted numerous times in the past. Wilson stated that whenever he shoplifted, he always made sure he stole less than $500 worth of merchandise, with the exception of one theft where he shoplifted merchandise worth more than $500. Wilson also openly testified to being a prostitute and, without any questioning on the matter, explained his prior convictions for aggravated robbery.

At the conclusion of the trial, the circuit judge granted the requested lesser-offense jury instructions for petit larceny, resisting arrest, and misdemeanor fleeing. The jury ultimately returned a verdict of guilty on all three indicted counts (grand larceny, felony fleeing, and simple assault against a law enforcement officer).

The circuit judge sentenced Wilson as a habitual offender to three concurrent sentences of life imprisonment without the possibility of parole in the custody of the MDOC, pursuant to Mississippi Code Annotated section 99–19–83 (Rev. 2007). The circuit court, on its own motion, performed the Eighth Amendment proportionality analysis and determined that the sentence imposed on Wilson was not constitutionally disproportionate. *Field v. State,* 28 So.3d 697, 701 (Miss.Ct.App.2010). Wilson filed both a motion for a new trial and a motion for a judgment notwithstanding the verdict (JNOV). The circuit judge denied these motions. On July 30, 2010, feeling aggrieved by the verdict of the jury and the sentence of the circuit court, Wilson filed a notice of appeal. This Court later ordered supplemental briefing from both parties on the issue of the constitutionality of Wilson's sentence. Upon review, we find no error.

*Wilson v. State,* 106 So.3d at 854-856.

### Mr. Wilson's Criminal History Easily Satisfied the Requirements of Mississippi's Habitual Offender Statute, Miss. Code Ann. § 99-19-83

On January 14, 2010, Wilson was indicted by a Desoto County Grand Jury on charges of:

| Count 1. | Grand Larceny in violation of Miss. Code Ann. § 97-17-41, |
|---|---|
| Count 2. | Felony fleeing in violation of Miss. Code Ann. § 97-9-72, and |
| Count 3. | Simple Assault on a Law Enforcement Officer in violation of Miss. Code Ann. § 97-3-7. |

SCR, Vol. 1, p. 10-11. On April 1, 2010, the State filed a Motion to Amend the Indictment to include Wilson's prior felony convictions to establish his status as habitual offender under Miss. Code Ann. § 99-19-83. SCR, Vol. 2, p. 177. On June 16, 2010, the State filed an Amended Motion to Amend Indictment to reflect that Wilson was previously convicted of three counts of aggravated robbery (sentenced to serve 7.2 years for each count) and one count of theft of property over $500 (sentenced to serve 1.5 years) in Shelby County, Tennessee (with documentation attached). SCR, Vol. 2, p. 203-205. Therefore, the trial court reviewed evidence establishing that Wilson had two or more prior felony convictions with separate terms of one year or more – with at least one of the convictions being a crime of violence, which meets the requirements of Miss. Code Ann. § 99-19-83. *Id.* On June 18, 2010, the circuit court granted the state's motion to amend the indictment. SCR, Vol. 2, p. 247.

### The Indictment, as Amended, Was Sufficient

The sufficiency of a state indictment is not a matter for federal *habeas corpus* relief unless the indictment was so defective that the convicting court had no jurisdiction. *Riley v. Cockrell,* 339 F.3d 308, 313-14 (5th Cir. 2003); *Williams v. Collins,* 16 F.3d 626, 637 (5th Cir. 1994) (citing *Yohey v. Collins,* 985 F.2d 222, 229 (5th Cir. 1993); *McKay v. Collins,* 12 F.3d 66, 68 (5th Cir. 1994) (*citing*

*Branch v. Estelle,* 631 F.2d 1229 (5th Cir. 1980)). "State law dictates whether a state indictment is

sufficient to confer a court with jurisdiction." *Williams,* 16 F.3d at 637. Rule 7.06 of the Uniform

Circuit and County Court Rules sets forth the required elements of an indictment under Mississippi

law:

> The indictment upon which the defendant is to be tried shall be a plain, concise and definite written statement of the essential facts constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation. Formal and technical words are not necessary in an indictment, if the offense can be substantially described without them. An indictment shall also include the following:
>
> 1. The name of the accused;
>
> 2. The date on which the indictment was filed in court;
>
> 3. A statement that the prosecution is brought in the name and by the authority of the State of Mississippi
>
> 4. The county and judicial district in which the indictment is brought;
>
> 5. The date and, if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient;
>
> 6. The signature of the foreman of the grand jury issuing it; and
>
> 7. The words "against the peace and dignity of the state."
>
> The court on motion of the defendant may strike from the indictment any surplussage, including unnecessary allegations or aliases.

The trial court sentenced Mr. Wilson as a habitual offender under Miss. Code Ann. § 99-19-83 which

provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more, whether served concurrently or not, in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence, as defined by Section 97-3-2, shall be sentenced to life imprisonment, and such sentence shall not be

> reduced or suspended nor shall such person be eligible for parole, probation or any other form of early release from actual physical custody within the Department of Corrections.

Miss. Code Ann. § 99-19-83. The Indictment, with its amendment, clearly sets forth the information required under Rule 7.06 of the Uniform Circuit and County Court Rules. The language makes the charges clear – including the predicate crimes used to enhance Mr. Wilson's sentence under Miss. Code Ann. § 99-19-83. *See* Doc. 37-1 at 11 (Indictment), Doc. 37-2 at 2-28 (Motion to Amend Indictment with documents supporting the habitual offender enhancement), and Doc. 37-2 at 98-99 (Order Amending Indictment to include habitual offender enhancement).

The record shows that Wilson criminal history met the following statutory requirements for such sentencing: Wilson had been convicted twice previously of felony crimes separately brought and arising out of separate incidents at different times; Wilson had been sentenced to and served separate terms of one year or more in the custody of the Tennessee Department of Corrections; and one or more of those felonies constituted a crime of violence, under § 99-19-83. At Wilson's sentencing hearing, the State also provided certified documents from the State of Tennessee reflecting Wilson's numerous previous convictions (seven felony convictions and six felony charges later reduced to misdemeanors), and the trial court acknowledged that many of Wilson's prior convictions constituted crimes of violence. SCR, Vol. 6, p. 326-336, Doc. 37-9 at 15. Wilson was sentenced to life imprisonment for each of his three convictions. SCR, Vol. 2, p. 283. The trial court noted that, without habitual sentencing, Wilson would have faced up to twenty years in the custody of the MDOC, were his felony convictions to run consecutively. SCR, Vol. 6, p. 326-336. The circuit court made findings on the record noting Wilson's lengthy history of felony and misdemeanor convictions and Wilson's age (44 years old) – and found that the appropriate sentence for Wilson, as a habitual

- 17 -

offender, was life imprisonment on each of the three counts, to run concurrently. *Id.* "Wilson's sentence is not disproportionate to [that of] a person with a similar criminal history who stands before the court at [his] age with his history charged with crimes that likewise include ... a conviction for a crime of violence." SCR, Vol. 6, p. 335.

The trial court conducted an on-the-record proportionality analysis when sentencing Wilson for each count. *Id.* On direct appeal, in evaluating whether the trial court's proportionality analysis was sufficient, or even necessary, the Mississippi Court of Appeals requested supplemental briefing from both parties pertaining to the issue of the constitutionality of Wilson's sentence. That court asked the state and the defense appellate counsel to address the following issues:

(1)    Whether or not in this case a threshold comparison of Wilson's crime to the sentence imposed meets the inference of gross disproportionality as explained in *Field v. State,* 28 So.3d 697, 701(Miss.Ct.App.2010), and

(2)    if Wilson's sentence met the threshold inference, whether the trial court's on-the-record proportionality analysis sufficiently satisfied the requirements set forth in *Field* and *Solem* to support concurrent life sentences imposed for each of Wilson's convictions. *Solem v. Helm,* 463 U.S. 277, 290–92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).

*Wilson,* 106 So.3d at 858. The Mississippi Court of Appeals upheld the circuit court's determination that Wilson's sentence was not grossly disproportionate to the crimes he committed. *Id* at 859.

Generally, *habeas corpus* relief is warranted only if a petitioner is able to show that the sentence imposed "exceeds or is outside the statutory limits, or is wholly unauthorized by law." *Haynes v. Butler,* 825 F.2d 921, 923 (5th Cir. 1987). In *Lockyer v. Andrade,*[1] the United States Supreme Court addressed whether *habeas corpus* relief was appropriate regarding a claim that a state sentence violated the Eighth Amendment. There is no "clear or consistent path for courts to follow" in

---

[1]*Lockyer v. Andrade,* 538 U.S. 63, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

determining whether a sentence violates the Eighth Amendment. *Lockyer,* 123 S.Ct. at 1173. One

"'clearly established' [legal principle] under § 2254(1) [is that a] gross disproportionality principle

[applies] to sentences for terms of years." *Id.* The gross proportionality principle applies, however,

only in "'exceedingly rare' and 'extreme' cases." *Id.* (citations omitted). The record before the court

shows that Mr. Wilson was sentenced according to Mississippi law, and, given his extensive lifelong

criminal history, the sentence was not grossly disproportionate to the crimes of his conviction. Thus,

*habeas corpus* relief is not warranted on this issue.

### Grounds Eleven and Fifteen: Jury Selection and Sufficiency of the Evidence to Support the Charge of Felony Fleeing

Mr. Wilson raised Grounds Eleven and Fifteen in his application for state post-conviction

relief, which the Mississippi Supreme Court denied. Thus, the State's highest court has decided these

claims on the merits, though without specifically discussing them. In Ground Eleven, Mr. Wilson

argued that the court violated his right to equal protection of the laws by denying his request for

twelve strikes during jury selection, rather six. He argues, in turn, that some members on the petit jury

were not fair and impartial because they had ties to law enforcement. This allegation fails to state a

constitutional claim.

Under the Equal Protection Clause of the Fourteenth Amendment, the State may not exercise

peremptory challenges to remove from the venire members of the defendant's race. *Batson v.*

*Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). In addition, the Equal

Protection Clause requires "the use of a jury numbering at least six persons . . . ." *Holland v.*

*Illinois,* 493 U.S. 474, 478, 110 S. Ct. 803, 806, 107 L. Ed. 2d 905 (1990). Under the Sixth

Amendment, a criminal defendant is entitled to a fair and impartial jury. *Duncan v. Louisiana,*

391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). One way to achieve this goal is to ensure

that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial." *Taylor v. Louisiana*, 419 U.S. 522, 528, 95 S. Ct. 692, 697, 42 L. Ed. 2d 690 (1975). The Supreme Court made clear, however, that:

> in holding that petit juries must be drawn from a source fairly representative of the community we impose no requirement that petit juries *actually chosen* must mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition, but the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof.

*Taylor*, 419 U.S. at 538 (emphasis added)(internal citations omitted).

The trial court's denial of Mr. Wilson's request for twelve peremptory challenges violates neither the Sixth nor the Fourteenth Amendment. Wilson has not alleged that the venire was tainted by excluding an identifiable group; nor has he alleged that the State excluded a racial group from the venire through use of its peremptory challenges. Mr. Wilson focuses solely on the issue of a juror's connection to law enforcement caused the jurors to favor law enforcement personnel at his expense.

Certainly, the trial court did not seek to pack the jury with jurors who sympathize with law enforcement. To the contrary, the court, *sua sponte*, struck four prospective members from the venire because they had close ties to law enforcement and showed, by their words, actions, or demeanor, that they might not have been able to decide Mr. Wilson's case fairly. SCR, Vol. 4 at 55-57. Two members of the twelve-member petit jury (numbers 23 and 53) had some tie to law enforcement, but both testified during *voir dire* that they could be fair and impartial. Mr. Wilson has presented nothing causing the court to believe otherwise. Wilson's attorney did not believe that he needed twelve strikes, as he did not exercise even the six peremptory challenges allotted

(nor did the State). *Id.* at 60-61. As such, Wilson's claims for relief in Ground Eleven are without merit and will be denied.

Finally, in Ground Fifteen, Darnell Wilson argues that the evidence at trial was insufficient to sustain his conviction on the charge of felony fleeing because there was no high speed chase. This ground for relief is wholly without merit. The statute in question, Miss. Code Ann. § 97-9-72(2), reads:

> *§ 97-9-72. Driver failing to stop motor vehicle pursuant to signal of law enforcement officer; penalty; defenses*
>
> (1) The driver of a motor vehicle who is given a visible or audible signal by a law enforcement officer by hand, voice, emergency light or siren directing the driver to bring his motor vehicle to a stop when such signal is given by a law enforcement officer acting in the lawful performance of duty who has a reasonable suspicion to believe that the driver in question has committed a crime, and who willfully fails to obey such direction shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1, 000.00) or imprisoned in the county jail for a term not to exceed six (6) months, or both.
>
> (2) Any person who is guilty of violating subsection (1) of this section by operating a motor vehicle in such a manner as to indicate a reckless or willful disregard for the safety of persons or property, or who so operates a motor vehicle in a manner manifesting extreme indifference to the value of human life, shall be guilty of a felony, and upon conviction thereof, shall be punished by a fine not to exceed Five Thousand Dollars ($5,000.00), or by commitment to the custody of the Mississippi Department of Corrections for not more than five (5) years, or both.

Miss. Code. Ann. § 97-9-72(2). The relevant evidence introduced at trial, set forth below, clearly fulfills the elements of the criminal statute:

> When Officer Kennedy arrived at Wilson's vehicle, other police officers had also arrived at the scene. Officer Kennedy observed Wilson drive the vehicle "backwards and forwards several times," and *Officer Kennedy testified that the other officers were trying to stop the vehicle. **When Wilson failed to comply with the officers' commands to stop and exit the vehicle, Officer Kennedy shot Wilson with a taser gun. At that point, Wilson drove off in the vehicle.***
>
> Officer Jeremy Iverson of the Southaven Police Department was also called to the scene. During the encounter in the Kohl's parking lot, Officer Iverson pulled his

vehicle within two feet of Wilson's vehicle. Officer Iverson exited his vehicle and went to the driver's side of Wilson's vehicle in an attempt to stop Wilson and force him and a passenger to exit the vehicle. *Wilson then put the vehicle in reverse and hit Officer Iverson's vehicle. He then put his car in drive, and hit a civilian vehicle. While Wilson drove his vehicle back and forth, Officer Iverson reached his arm into the car and attempted to remove the keys from the ignition.* Wilson then drove away in his vehicle, with police officers in pursuit.

*As a result of the incident, Officer Iverson testified that he experienced pain and soreness from his shoulder to his fingertips. Officer Iverson went to Baptist Memorial Hospital for treatment, where doctors diagnosed him with a shoulder strain.* Officer Steven Raines, another officer at the scene, provided testimony which largely corroborated the testimony provided by Officers Kennedy and Iverson.

*Wilson v. State,* 106 So.3d at 854-856 (emphasis added).

Multiple law enforcement officers gave Mr. Wilson visible and audible commands to stop his vehicle. The officers had reasonable suspicion to believe that he had committed a crime based upon the call from the store employee. Despite the commands of the officers, he willfully failed to obey their direction. As he careened around, moving back and forth in his vehicle, he struck a civilian vehicle and a police car – and, in doing so, injured a police officer who had leaned into Wilson's car to stop him from fleeing. Certainly these actions constitute "reckless or willful disregard for the safety of persons or property[] or manifesting extreme indifference to the value of human life" under § 97-9-72(2). Weighing and interpreting the evidence presented was the sole province of the jury, which found unanimously that Wilson was guilty of the three charges outlined in the Indictment. It is the province of the jury to determine the facts in a criminal case – and apply to those facts to the law given by the court through jury instructions. Indeed, "[j]uries are typically called upon to render unanimous verdicts on the ultimate issues of a given case." *McKoy v. North Carolina*, 494 U.S. 433, 449, 110 S. Ct. 1227, 1236, 108 L. Ed. 2d 369 (U.S. 1990) (plurality opinion) (Blackmum, J., concurring). This final claim for relief is wholly without merit and will also be denied.

As to all the claims decided on the merits in state court, Mr. Wilson has not shown that those claims were decided contrary to clearly established federal law, nor that the state court determined the facts unreasonably in light of the evidence presented. As such, these claims will be dismissed.

### Conclusion

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be dismissed. A final judgment consistent with this memorandum opinion will issue today.

**SO ORDERED**, this, the ___5___ day of July, 2017.

_____

SENIOR JUDGE